<table>
<tr><td colspan="3" align="center">Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL I</td></tr>
<tr>
<td>ORLANDO CAMACHO VÉLEZ Y OTROS<br><strong>Parte recurrida</strong><br><br>v.<br><br>ELIEZER MOLINA PÉREZ Y OTROS<br>Demandado<br><br>JOSÉ A. LORENTE PLAZA<br><strong>Parte peticionario</strong></td>
<td><strong>TA2025CE00403</strong><br><br><br>CONSOLIDADO CON:</td>
<td>CERTIORARI<br>procedente del Tribunal de Primera Instancia, Sala Superior de <strong>San Sebastián</strong><br><br>Civil Núm.:<br><strong>AG2023CV01793</strong><br><br><br>Sobre:<br><strong>DAÑOS Y OTROS</strong></td>
</tr>
<tr>
<td>ORLANDO CAMACHO VÉLEZ Y OTROS<br><strong>Parte recurrida</strong><br><br>v.<br><br>ELIEZER MOLINA PÉREZ,<br>DEPARTAMENTO DE JUSTICIA,<br>ADMINISTRACIÓN DE TRIBUNALES Y OTROS<br><strong>Parte peticionaria</strong></td>
<td><strong>TA2025CE00449</strong></td>
<td><em>CERTIORARI</em><br>procedente del Tribunal de Primera Instancia, Sala Superior de <strong>San Sebastián</strong><br><br>Caso Núm.:<br><strong>AG2023CV01793</strong><br><br><br><br>Sobre:<br><strong>LIBELO, CALUMNIA O DIFAMACIÓN, DAÑOS</strong></td>
</tr>
</table>

Panel integrado por su presidente el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio

Pérez Ocasio, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 26 de septiembre de 2025.

Comparecen ante nos los peticionarios José Lorente Plaza, en adelante, Lorente Plaza, y la Oficina de Administración de los Tribunales de Puerto Rico, en adelante, OAT, solicitando que revoquemos dos dictámenes. Lorente Plaza solicita nuestra revisión de la *"Resolución"* del Tribunal de Primera Instancia, Sala Superior de San Sebastián, en adelante, TPI-San Sebastián del 10 de julio de 2025. En la misma, el Foro Recurrido declaró *"No Ha Lugar"* la *"Moción de Desestimación"* presentada por Lorente Plaza. Por su parte, OAT solicita nuestra revisión de la *"Sentencia Parcial"* del mismo Tribunal, del 14 de julio de 2025, en la que declaró *"No Ha Lugar"* su solicitud de desestimación.

Las partes radicaron sus respectivos petitorios mediante recurso de *certiorari*. Sin embargo, por la naturaleza de los dictámenes recurridos y los errores planteados por ambos, consolidamos los mismos, atendiéndolos en conjunto.

Por los fundamentos que expondremos a continuación, *expedimos* y *revocamos*.

**I.**

Los hechos de este caso tienen su génesis en el mes de agosto del año 2023, cuando los recurridos y esposos Ignari Acevedo Rosario (abogada y notaria de profesión), en adelante, Acevedo Rosario, y Orlando Camacho Vélez (Director de la División de Homicidios en el Cuerpo de Investigaciones Criminales del Municipio de Aguadilla), en adelante, Camacho Vélez, adquirieron una propiedad en el Condominio Sol y Playa, en adelante, Condominio, en el Municipio de Rincón. Un mes más tarde, Acevedo Rosario fue electa como la vicepresidenta de la Junta de Titulares del Condominio en cuestión.[1]

Surge del expediente en récord, que durante el mes de septiembre del año 2023, el Honorable Eliezer Molina Pérez, Senador por Acumulación del Senado de Puerto Rico, en adelante, Molina Pérez, alegadamente los calumnió en las redes sociales, de manera maliciosa y con grave menosprecio a la verdad.

El 10 de septiembre de 2023, se le concedió a los recurridos una Orden de Protección *Ex-Parte* contra Molina Pérez, al amparo de la Ley Contra el Acecho en Puerto Rico, Ley Núm. 284-1999, 33 LPRA sec. 4013 *et seq.* Según esta, Molina Pérez fue notificado de la misma el *11 de septiembre de 2023*. La vista en su fondo estaba pautada para el 15 de septiembre de 2023. Sin embargo, el 14 de septiembre de 2023, los recurridos solicitaron la transferencia de la

---

[1] SUMAC, Entrada Núm. 1.

vista, la cual quedó, entonces, pautada para el *6 de noviembre de 2023*. Según los recurridos, el TPI-Aguadilla ordenó la notificación a Molina Pérez, y extendió la Orden de Protección *Ex-Parte*. Surge de las alegaciones que obran en el expediente del caso, que la OAT entregó a Lorente Plaza, Alguacil del TPI-Mayagüez, los documentos requeridos para diligenciar los mismos a Molina Pérez el 15 de septiembre de 2023, quien se encontraría en dicho Tribunal. Según los recurridos, Lorente Plaza le diligenció a la representación legal de Molina Pérez la citación para el 6 de noviembre de 2023, pero no la extensión de la Orden de Protección *Ex-Parte*.[2]

Así las cosas, surge que el 10 de octubre de 2023 Molina Pérez se personó al Condominio, por lo que Acevedo Rosario se movilizó al cuartel de la Policía Estatal de Rincón, entregó la Orden de Protección *Ex-Parte* a su favor e informó que Molina Pérez se encontraba frente a su apartamento. Estos hechos provocaron que Molina Pérez fuera arrestado. Sin embargo, el Departamento de Justicia no radicó cargos contra este, ya que la extensión de la Orden de Protección *Ex-Parte* **no** le fue diligenciada a Molina Pérez.

Ahora bien, estando desasosegados por las alegadas calumnias de Molina Pérez, el 1 de noviembre de 2023, Acevedo Rosario y Camacho Vélez presentaron una *"Demanda"* ante el TPI-Aguadilla, contra Molina Pérez. La misma fue incoada por las siguientes causas de acción: *Daños y Perjuicios* al amparo del Artículo 1536 del Código Civil de Puerto Rico de 2020, en adelante, Código Civil de 2020, 31 LPRA sec. 10801; *Libelo y Calumnia* al amparo del Código de Enjuiciamiento Civil de Puerto Rico de 1933, en adelante, Código de Enjuiciamiento Civil, 32 LPRA secs. 3141-3149; y *Difamación* al amparo del Artículo II, Sección 8 de la Constitución del Estado Libre Asociado de Puerto Rico, 1 LPRA.[3]

---

[2] SUMAC, Entrada Núm. 51.
[3] SUMAC, Entrada Núm. 1.

Según la *"Demanda"*, las expresiones públicas de este incluyeron las siguientes declaraciones:

1. Camacho Vélez, citó a Molina Pérez al CIC bajo falsas pretensiones, para tomarle sus datos personales.

2. Camacho Vélez arrestó a Molina Pérez y, junto a otros compañeros policías, divulgó la ficha de este a los medios de comunicación.

3. Camacho Vélez no ordenó las pruebas de ADN correspondientes en un caso, lo que provocó la desestimación del mismo.

4. Acevedo Rosario tenía influencias y poder en el CIC y el Negociado de Investigaciones Especiales.

5. Se fabricaban casos a los manifestantes del Condominio Sol y Playa porque la vicepresidenta era Acevedo Rosario.

6. Los recurridos son personas corruptas.

7. Policías enviados por Camacho Vélez acechaban la casa de Molina Pérez.

8. Los recurridos se reunían con fiscales para fabricarle casos.

9. Camacho Vélez citó a Molina Pérez para radicarle cargos por alteración en una escena de crimen.

10. Los recurridos han dañado la flora y fauna del país.

11. Camacho Vélez utilizó la maquinaria del Gobierno para perseguirlo, encarcelarlo, agredirlo y ocultar información.

12. Camacho Vélez tramó su muerte.

13. Camacho Vélez era el culpable de todo lo sucedido en el Municipio de Rincón.

14. Camacho Vélez instruía a los agentes del Orden Público que defendieran su propiedad.

En su petitorio, los recurridos solicitaron una remuneración de $1,350,00.00 en concepto de daños, daños morales y honorarios de abogado.

El 27 de noviembre de 2023, el caso fue trasladado al TPI-San Sebastián, al amparo de la Regla 3.5 de Procedimiento Civil, 32 LPRA Ap. V, R. 3.5.[4] El 8 de mayo de 2024, Molina Pérez presentó

---

[4] SUMAC, Entrada Núm. 4.

una *"Contestación a Demanda y Reconvención"*.[5] Entre las asuntos levantados en la reconvención, Molina Pérez alegó que fue arrestado ilegalmente el 10 de octubre de 2023, ya que la extensión de la Orden de Protección *Ex-Parte* en su contra no le fue notificada.

Luego de varios asuntos procesales, el 11 de septiembre de 2024, Acevedo Rosario presentó una *"Demanda Contra Terceros"*, contra el Departamento de Justicia de Puerto Rico, en adelante, Departamento de Justicia; la OAT; y Lorente Plaza.[6] En esta demanda, la recurrida planteo que la OAT o Lorente Plaza no ejecutaron la orden del Tribunal en el tiempo establecido por ley, por negligencia o decisión personal. Expone Acevedo Rosario que Lorente Plaza "tenía el deber ministerial de diligenciar la orden judicial conforme a las disposiciones de la ley y las reglas de procedimiento civil aplicables", y que al no hacerlo, este "incumplió con sus responsabilidades como funcionario público".[7]

En su escrito, la recurrida alega que la omisión de OAT, el Departamento de Justicia y Lorente Plaza "constituye una negligencia en la ejecución de los deberes ministeriales, lo cual ha resultado en la continua exposición de los demandantes a situaciones de peligro y ansiedad causadas por los actos de acecho, aumentando el riesgo de daño físico y emocional".[8] Sostiene, además, que este incumplimiento los expuso a daños torticeros frente a Molina Pérez, quien fue arrestado ilegalmente. Según aduce en su demanda contra terceros, Acevedo Rosario entiende que los peticionarios deben responde por los daños a los que esté expuesta por la reconvención de Molina Pérez. Así, alega que es acreedora de la suma de veinticinco mil dólares ($25,000.00) en concepto de

---

[5] SUMAC, Entrada Núm. 37.
[6] SUMAC, Entrada Núm. 51.
[7] SUMAC, Entrada Núm. 51, pág. 3.
[8] SUMAC, Entrada Núm. 51, pág. 5.

daños emocionales y psicológicos, además de una suma para cubrir los gastos y honorarios de abogado.

Por estos hechos, solicitó la recurrida que OAT, el Departamento de Justicia y Lorente Plaza respondan por los daños que en su día recaigan sobre Acevedo Rosario por la *Reconvención* en su contra, y que en su alternativa, condene a los peticionarios a sufragar la cuantía solicitada en la demanda.

En respuesta, el 22 de noviembre de 2024, Departamento de Justicia, en representación del Estado Libre Asociado de Puerto Rico, solicitó la desestimación de la demanda contra tercero en su contra, por insuficiencia en el emplazamiento.[9] El 9 de diciembre de 2024, los recurridos se opusieron a la misma.[10] Por su parte, el Departamento de Justicia, en representación de Lorente Plaza, radicó una *"Moción de Desestimación por Inmunidad Condicionada"* ante el TPI-San Sebastián el 18 de febrero de 2025.[11] Además, el 19 de febrero de 2025, compareció el Gobierno de Puerto Rico, en representación del Departamento de Justicia y OAT, con una *"Moción de Desestimación"*, en la que levantaron la defensa de *inmunidad soberana.*[12] Finalmente, el 18 de marzo de 2025, Acevedo Rosario se opuso a las mociones de desestimación de los peticionarios.[13]

Así las cosas, el 10 de julio de 2025, el TPI-San Sebastián emitió una *"Resolución"* en la que declaró *"No Ha Lugar"* la solicitud de desestimación de Lorente Plaza, por entender que la recurrida podría tener una causa de acción contra este.[14] Razonó que esto debía "ser objeto de prueba y atendida en otra etapa de los procedimientos".[15] Sin embargo, el 14 de julio de 2025, el Foro

---

[9] SUMAC, Entrada Núm. 59.
[10] SUMAC, Entrada Núm. 61.
[11] SUMAC, Entrada, Núm. 71.
[12] SUMAC, Entrada Núm., 72.
[13] SUMAC, Entrada Núm. 76.
[14] SUMAC, Entrada Núm. 83.
[15] SUMAC, Entrada Núm. 83, pág. 7.

Recurrido emitió una *"Sentencia Parcial"* en la que declaró *"No Ha Lugar"* la desestimación contra la OAT, y *"Ha Lugar"* la desestimación contra el Departamento de Justicia. Razonó que la inmunidad soberana solo prevalecía cuando la actuación de la persona empleada es imprevisible, o cuando no se puede establecer nexo jurídico suficiente entre el empleado y los intereses del Estado. Concluyó que esto era algo que debía dilucidarse durante el litigio.

El 23 de julio de 2025, Lorente Plaza y OAT presentaron sus respectivas solicitudes de reconsideración.[16] El 4 de agosto de 2025, el TPI-San Sebastián declaró *"No Ha Lugar"* a ambas.[17]

Inconforme, Lorente Plaza recurrió ante esta Curia mediante *"Petición de Certiorari"* el 3 de septiembre de 2025, e hizo el siguiente señalamiento de error:

> **Erró el Honorable Tribunal de Primera Instancia al denegar la Moción de Desestimación presentada por el peticionario al amparo de la Regla 10.2(5) de Procedimiento Civil, aun cuando de los hechos alegados en la Demanda Contra Tercero se desprende que la parte demandante incumple con el estándar de plausibilidad aplicable y carece de remedio alguno contra el funcionario en su carácter personal a la luz de la doctrina de inmunidad condicionada.**

El 5 de septiembre de 2025, emitimos una *"Resolución"* en la que concedimos hasta el 15 de septiembre de 2025 para que la parte recurrida presentara su oposición al recurso, conforme a la Regla 37 del Reglamento del Tribunal de Apelaciones, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, pág. 56-57, 215 DPR ___ (2025).

Sin embargo, el 12 de septiembre de 2025, OAT radicó su recurso de *"Certiorari"* ante nos, haciendo el siguiente señalamiento de error:

> **Erró el Tribunal de Primera Instancia al denegar la Moción de Desestimación presentada por el Estado, en**

---

[16] SUMAC, Entrada, Núm. 85 y 86.
[17] SUMAC, Entrada, Núm. 87 y 88.

**representación de la OAT, al amparo de la Regla 10.2(5) de Procedimiento Civil, aun cuando de los hechos alegados en la Demanda Contra Tercero se desprende que la parte demandante incumplió con el estándar de plausibilidad aplicable a las alegaciones fácticas, y carece de remedio alguno contra de la OAT a la luz de la doctrina de inmunidad soberana.**

El 16 de septiembre de 2025, emitimos una *"Resolución"* en la *consolidamos ambos recursos*, y concedimos hasta el 22 de septiembre de 2025 para que la parte recurrida presentara su oposición al recurso, conforme a la Regla 37 del Reglamento del Tribunal de Apelaciones, supra.

En cumplimiento de orden, los recurridos presentaron sus oposiciones a los recursos los días 15 y 22 de septiembre de 2025. Perfeccionado los recursos de epígrafe, resolvemos.

## II.

### A. Certiorari

El *certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. V. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *800 Ponce de León v. AIG,* 205 DPR 163, 174-175 (2020). Ahora bien, tal discreción no opera en lo abstracto. Con respecto a lo anterior y para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción

de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

[. . .]

Según se desprende de la citada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. *Mun. De Caguas v. JRO Construction,* 201 DPR 703, 710-711 (2019).

Luego de auscultar si el recurso discrecional cumple con las disposiciones de la Regla 52.1 de Procedimiento Civil, supra, el tribunal procederá a evaluar el recurso a la luz de la Regla 40 del Reglamento del Tribunal de Apelaciones, supra. La mencionada Regla expone los criterios que esta Curia deberá considerar para ejercer sabia y prudentemente su decisión de atender o no las controversias ante sí. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Véase, además, *Rivera et al. v. Arcos Dorados et al.,* supra, pág. 209; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020).

Así, la Regla 40 del Reglamento del Tribunal de

Apelaciones, supra, funge como complemento a la Regla 52.1 de Procedimiento Civil, supra. *Torres González v. Zaragoza Meléndez*, supra. La precitada Regla dispone lo siguiente:

El [T]ribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A)   Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B)   Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C)   Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D)   Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E)   Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.

(F)   Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G)   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

*BPPR v. SLG Gómez-López*, 213 DPR 314, 337 (2023)

Sin embargo, ninguno de los mencionados criterios es determinante, por sí solo, para este ejercicio y no constituye una lista exhaustiva. *García v. Padró*, 165 DPR 324, 335 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del

litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

Nuestro Tribunal Supremo ha expresado también que, de ordinario, el tribunal revisor "no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *W.M.M., P.F.M. et al. v. Colegio*, 211 DPR 871, 902-903 (2023); *Zorniak Air Servs. V. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992), citando a *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986). Véase, además, *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

### B. **Desestimación**

La Regla 10.2 de Procedimiento Civil, supra, permite que una parte demandada en un pleito solicite la desestimación de la demanda presentada en su contra. *BPPR v. Cable Media*, 2025 TSPR 1, 215 DPR __ (2025); *Díaz Vázquez et al. v. Colón Peña et al.*, 2024 TSPR 113, 214 DPR __ (2024); *González Méndez v. Acción Social de Puerto Rico,* 196 DPR 213, 234 (2016). Esta, dispone que una parte demandada presentará una moción fundamentada en: (1) la falta de jurisdicción sobre la materia; (2) la falta de jurisdicción sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; **(5) dejar de exponer una reclamación que justifique la concesión de un remedio** y; (6) dejar de acumular una parte indispensable. *Rodríguez Vázquez et als. v. Hosp. Auxilio Mutuo*, 2025 TSPR 55, 215 DPR ___ (2025); *Díaz Vázquez et al. v. Colón Peña et al.*, supra; *Inmob. Baleares, et al. v. Benabe et al.*, 2024 TSPR 112, 214 DPR __ (2024); *Rivera, Lozada v.*

*Universal*, 2024 TSPR 99, 214 DPR __ (2024); *Blassino, Reyes v. Reyes Blassino*, 2024 TSPR 93, 214 DPR __ (2024); *Costa Elena y otros v. Magic Sport y otros*, 213 DPR 523, 533 (2024).

Para que proceda una moción al amparo de la Regla 10.2, supra, el Foro Primario deberá tomar como ciertos todos los hechos alegados en la demanda y considerarlos de la manera más favorables a la parte demandante. *Díaz Vázquez et al. v. Colón Peña et al.*, supra; *Inmob. Baleares, et al. v. Benabe et al.*, supra; *Rivera, Lozada v. Universal*, supra; *Blassino, Reyes v. Reyes Blassino*, supra; *Costas Elena y otros v. Magic Sport y otros*, supra, pág. 533; *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 84 (2023); *Cobra Acquisition v. Mun. Yabucoa et. al.*, 210 DPR 384, 396 (2022); *Bonnelly Sagrado et al. v. United Surety*, 207 DPR 715, 722 (2021). Es decir, al momento de evaluar una moción de desestimación, los tribunales deberán examinar los hechos alegados en la demanda de forma conjunta y de la forma más liberal posible a favor de la parte demandante. *Morales et al. v. Asoc. Propietarios*, 2024 TSPR 61, 213 DPR__ (2024); *Inmob. Baleares, et al. v. Benabe et al.*, supra; *Cruz Pérez v. Roldán Rodríguez et. al.*, 206 DPR 261, 267 (2021); *López García v. López García*, 200 DPR 50, 69 (2018).

Bajo esta premisa, para que una moción de desestimación prospere, se tendrá que demostrar de forma certera que el demandante no tiene derecho a remedio alguno, que pudiere probar en apoyo a su reclamación. *Díaz Vázquez et al. v. Colón Peña et al.*, supra; *Inmob. Baleares, et al. v. Benabe et al.*, supra*; Cobra Acquisition v. Mun. Yabucoa et. al.,* supra, pág. 398*; López García v. López García*, supra, pág. 70. Esta Regla 10.2 (5), es de las de mayor complejidad en términos jurídicos, pues, una moción al amparo de esta se fundamenta en que los hechos que alega la parte demandante, aun presumiéndose ciertos, no son suficientes como base para que se les conceda un remedio.  Es decir, en efecto,

procederá la desestimación si aun dando por cierto todos los hechos bien alegados del demandante, no se demuestra derecho a una reclamación. *Rivera, Lozada v. Universal,* supra; *Blassino, Reyes v. Reyes Blassino*, supra; *Trinidad Hernández et al. v. E.L.A. et al.*, 188 DPR 828, 848 (2013).

### C. Suficiencia fáctica en las alegaciones

La anterior Regla 6.1 de las derogadas Reglas de Procedimiento Civil de 1979, 32 LPRA Ap. III, solo era necesario exponer en la demanda una "relación sucinta y sencilla de la reclamación demostrativa de que el peticionario tenía derecho a un remedio". Este enfoque, de amplia liberalidad en la redacción de las alegaciones, cambió en el mes de julio del año 2010, con la entrada en vigor de las actuales Reglas de Procedimiento Civil aprobadas en el 2009.

La Regla 6.1 *vigente* de Procedimiento Civil, supra, establece que las alegaciones de una demanda contendrán una "relación sucinta y sencilla de los hechos **demostrativos** de que la parte peticionaria tiene derecho a un remedio". (Énfasis suplido). Recientemente, nuestro Alto Foro expresó que nuestro ordenamiento jurídico "se exige que el escrito comprenda una relación sucinta y sencilla de los hechos demostrativos de que la parte peticionaria tiene derecho a un remedio". *León Torres v. Rivera Lebrón*, 204 DPR 20, 40 (2020).

Sobre este particular, expresa el profesor Rafael Hernández Colón lo siguiente:

> La R[egla] 6.1 [...] impone al demandante una obligación relativamente leniente. Un demandante cumple con la exigencia de la regla al notificar al demandado de su reclamación y del remedio de tal modo que permita al demandado formular su contestación. [...] No obstante, si bien el deber que se le exige al demandante es bastante liberal y se le requiere brevedad en su exposición, *la alegación debe aún contener la suficiencia fáctica* que

se necesita para que el demandado reciba una adecuada notificación sobre lo que se le reclama y la base que la sustenta.

R. Hernández Colón, *Derecho procesal civil,* 6ta ed., San Juan, Lexis Nexis, 2017, pág. 287.

(Énfasis suplido)

En la misma obra, el tratadista en cuestión añadió lo siguiente, respecto a la Regla 6.1 de Procedimiento Civil de 2009, supra:

El demandante debe alegar hechos suficientes que eleven su reclamación ***más allá del nivel especulativo*** y la empujen a través de la línea de lo "concebible" o lo "plausible". [...] ***El estándar de plausibilidad requiere que las alegaciones contengan una relación fáctica suficiente que, aceptada como cierta, establezca que la reclamación del remedio es plausible de su faz***.

R. Hernández Colón, op. cit., pág. 287.

(Citas y notas al calce omitidas).
(Énfasis nuestro).

Además, con relación a esta Regla el Comité Asesor Permanente de Reglas de Procedimiento Civil explicó en su informe que: "... la propuesta requiere que en las alegaciones se aporte una relación de hechos con el propósito de que las partes y el tribunal puedan apreciar con mayor certeza los eventos medulares de la controversia". Tribunal Supremo de Puerto Rico, Secretariado de la Conferencia Judicial y Notarial, *Informe de Reglas de Procedimiento Civil,* Vol. I, diciembre 2007, a la pág. 70.

Si bien es cierto que el Tribunal viene obligado a aceptar como ciertas todas las alegaciones bien hechas, es importante que distinga las meras alegaciones concluyentes que no pueden presumirse ciertas. Hernández Colón, op. cit., a la pág. 307. Luego de brindarle veracidad a los hechos bien alegados, debe determinar si a base de éstos la demanda establece una reclamación plausible que justifique que el demandante tiene derecho a un remedio,

guiado en su análisis por la experiencia y el sentido común. De determinar que no cumple con el estándar de plausibilidad, el tribunal debe desestimar la demanda y no permitir que una demanda insuficiente proceda bajo el pretexto de que con el descubrimiento de prueba pueden probarse las alegaciones conclusorias. *Íd.*

Por otro lado, destacamos lo resuelto por el Tribunal Supremo de los Estados Unidos en los casos *Bell Atlantic Corp. v. Twombly,* 550 US 544 (2007) y *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), en contraposición al estándar aplicable para determinar la suficiencia de las alegaciones de la demanda ante una moción de desestimación bajo las Reglas de Procedimiento Civil, supra. No es posible que amparado en cualquier alegación de hecho un demandante pueda prevalecer, sino que es necesario que este haya superado la línea entre lo *imaginable y lo factible.* Es decir, para evitar la desestimación, el demandante debe proveer las bases fácticas sobre las cuales descansa su reclamación que sean suficientes para elevar su derecho a la concesión de un remedio más allá de un nivel especulativo. *Bell Atlantic Corp. v. Twombly,* supra, a la pág. 555.

### D. Inmunidad condicionada

Los funcionarios públicos gozan de una *inmunidad condicionada* que opera como una limitación de responsabilidad civil en el descargo de sus deberes y responsabilidades oficiales. *Romero Arroyo v. E.L.A.,* 127 DPR 724, 745 (1991). Esta es una defensa afirmativa que puede ser levantada por el funcionario, agente o empleado demandado. *Íd.* La inmunidad de los funcionarios públicos no se deriva de la inmunidad del soberano, sino que, por el contrario, se encuentra cimentada en consideraciones de política pública. *Íd.*

Esta defensa afirmativa tiene dos aspectos, a saber, "[u]n funcionario o empleado que no actúa de buena fe es responsable, pero aun cuando medie la buena fe responde si actuó irrazonablemente o si debió haber sabido que su conducta era ilegal". *Acevedo v. Srio. Servicios Sociales*, 112 DPR 256, 262 (1982). Sin embargo, la buena fe no basta, puesto que no pueden violarse principios legales establecidos. "La razonabilidad de la actuación oficial constituye una cuestión de hecho a determinarse caso por caso". *Íd.*

Por tanto, no procede imponerles responsabilidad a funcionarios de gobierno en su carácter personal cuando ***no hay alegación ni prueba de mala fe, malicia o tan siquiera de error en la conducta de estos empleados***. *De Paz Lisk v. Aponte Roque*, 124 DPR 472, 495 (1989). No obstante, la inmunidad condicionada no es una protección absoluta. ***No cubre actuaciones dolosas, fraudulentas, maliciosas o delictivas*** en que los funcionarios del gobierno puedan incurrir en el desempeño de sus funciones. *In re Colton Fontán*, 128 DPR 1, 8 (1991).

### E. Inmunidad soberana

En el año 1913, la decisión del Tribunal Supremo federal en *People of Porto Rico v. Rosaly y Castillo*, 227 US 270 (1913), asentó la doctrina de *inmunidad soberana* en nuestro ordenamiento. La misma impide que se presenten reclamaciones judiciales contra el Estado, a menos que éste consienta a ser demandado. *Doble Seis Sport v. Depto. Hacienda*, 190 DPR 763, 788 (2014); *Defendini Collazo et al. v. E.L.A., Cotto*, 134 DPR 28, 39-40 (1993). El reconocimiento de dicha inmunidad del Estado Libre Asociado propició que nuestra Asamblea Legislativa aprobara una serie de estatutos que, a través de los años, han autorizado cierto tipo de

demandas contra el Estado. *Rivera Serrano v. Mun. de Guaynabo*, 191 DPR 679, 685 (2014).

Mediante la aprobación de la Ley de Reclamaciones y Demandas contra el Estado, en adelante, Ley Núm. 104, Ley Número 104 de 29 de junio de 1955, 32 LPRA 3077 *et seq.*, nuestra Asamblea Legislativa impuso las condiciones según las cuales el Estado renunciaría parcialmente a su inmunidad soberana. De esta forma, la renuncia parcial a la inmunidad soberana del Estado Libre Asociado vino acompañada de limitaciones y salvaguardas procesales que rigen la forma en que un perjudicado podrá reclamar indemnización del soberano. *Berríos Román v. E.L.A.*, 171 DPR 549, 556 (2007). Por medio de dicho estatuto, además, el Estado consintió a ser demandado en daños y perjuicios por las actuaciones y omisiones culposas o negligentes de sus funcionarios, empleados o agentes, mientras estén ejerciendo sus funciones. *Doble Seis Sport v. Depto. Hacienda*, supra, pág. 789; *Berríos Román v. E.L.A.*, supra, pág. 556. Sin embargo, según mencionáramos, dicha anuencia está enmarcada en ciertas limitaciones.

De acuerdo con el Tribunal Supremo, el legislador "lo que quiso hacer fue conservar la inmunidad del Estado contra litigios originados por aquellos actos torticeros cometidos deliberada o intencionalmente por sus funcionarios, agentes o empleados". *Alberio Quiñónez v. E.L.A.*, 90 DPR 812, 815 (1964), citando a *Meléndez v. E.L.A.*, 81 DPR 824, 829 (1960). Así, se ha establecido que "[l]a inmunidad del Estado contra reclamaciones por daños se ha reducido a aquellas originadas en actos criminosos cometidos intencional o deliberadamente por sus funcionarios, agentes o empleados". *Rivera de Vincenti v. E.L.A.*, 108 DPR 64, 71 (1978).

Al interpretar dicha ley, el Tribunal Supremo dispuso en *Leyva et al. v. Aristud et al.,* 132 DPR 489, 510 (1993), que para

que un demandante pueda prevalecer debe establecer que el daño fue producido por un funcionario del Estado actuando en su capacidad oficial, dentro del marco de sus facultades, de manera negligente y no intencional, y que existe una relación causal entre la conducta culposa y el daño producido.

Sin embargo, el Artículo 6 de la Ley Núm. 104, supra, sec. contiene un catálogo *numerus clausus* de acciones no autorizadas contra el Estado. A tales efectos, dispone:

> Nada en esta ley autoriza las acciones por daños y perjuicios contra el Estado por acto u omisión de un funcionario, agente o empleado:
>
> (a)  En el cumplimiento de una ley o reglamento, aun cuando éstos resultaren ser nulos.
>
> (b)  En el desempeño de una función de carácter discrecional, aun cuando hubiere abuso de discreción.
>
> (c)  En la imposición y cobro de contribuciones.
>
> (d)  Constitutivo de acometimiento, agresión u otro delito contra la persona, encarcelación ilegal, ***arresto ilegal***, persecución maliciosa, calumnia, libelo, difamación y falsa representación e impostura.
>
> [...]
>
> (Énfasis nuestro).

### III.

Lorente Plaza y la OAT recurren ante esta Curia de una *"Resolución"* y *"Sentencia Parcial"* dictadas por el TPI-San Sebastián, en la que se les denegó la defensa afirmativa de inmunidad condicionada y soberana, respectivamente. Aducen, a su vez, que el Foro Recurrido erró al no desestimar la *"Demanda Contra Terceros"* en su contra, por no existir plausibilidad en sus alegaciones. En esencia, es su contención que procedía la desestimación por insuficiencia en alegaciones, y a la luz de las doctrinas de inmunidad. *Les asiste la razón.*

Con relación a la inmunidad condicionada que levantó Lorente Plaza, vimos que la misma es una protección civil contra

demandas por daños de las que se benefician los servidores públicos, cuando, en el ejercicio de algún deber ministerial, se provoca un agravio. Como señaláramos, esta defensa es inaplicable únicamente cuando el agente o servidor público actúa con dolo, mala fe o malicia.

Evaluadas las contenciones de la *"Demanda Contra Terceros"* bajo este crisol, concluimos que las mismas no apuntan a una actuación de esta naturaleza. Surge de la demanda que Lorente Plaza fue encomendado con notificar la fecha de la nueva vista para la Orden de Protección *Ex-Parte* y la extensión de la misma. Acevedo Rosario, incluso, señala que este diligenció parcialmente los documentos al abogado de Molina Pérez. Es decir, como mucho, la misma resultó en una notificación incompleta. Lorente Pérez realizaba un deber ministerial, y es precisamente para este tipo de asuntos, que se reconoce la inmunidad condicionada, para proteger a los servidores públicos que puedan producir un perjuicio en el ejercicio razonable y de buena fe de sus funciones. En su demanda, ni en sus escritos ante nos, la recurrida logra establecer, mediante sus alegaciones o un ápice de prueba, por qué la omisión del peticionario respondió a la mala fe o dolo.

Lo relacionado a las actuaciones puramente ministeriales, los empleados públicos "están sujetos a normas ordinarias de responsabilidad civil", por lo que no sería una práctica equilibrada responsabilizarlos "en su *carácter personal* cuando la misma está predicada exclusivamente en que llevaron a cabo unas operaciones de gobierno de acuerdo con directrices oficiales". *De Paz Lisk v. Aponte Roque,* supra, pág. 495. (Énfasis nuestro). Es por ello que entendemos que Lorente Plaza le cobija la inmunidad condicionada.

Por otro lado, evaluamos la *inmunidad soberana* levantada por OAT. El estado de derecho que rige esta defensa nos ilustra que la misma no aplica precisamente en este tipo de casos, en donde un

empleado público, en el ejercicio de una función oficial de buena fe, provoca un daño – de ordinario no intencional. Es decir, la *inmunidad soberana* del Estado usualmente procede cuando un funcionario provoca un daño fuera del descargue de sus funciones, o cuando el mismo sea el resultado de un acto u omisión de mala fe, doloso, intencional, irrazonable o con el conocimiento de su ilegalidad.

Sin embargo, una simple lectura de la Ley Núm. 104, supra, obstaculiza la previa conclusión al caso de marras. Como expusiéramos previamente, el estatuto que rige los pleitos contra el Estado dispone que contra el Estado no procederán las demandas en daños que sean el resultado, entre otras cosas, de un *arresto ilegal.*

Ahora bien, si bien es cierto que Acevedo Rosario, en su *"Demanda Contra Terceros"* le imputa conducta *ultra vires* a Lorente Plaza por no diligenciar la extensión de su Orden de Protección *Ex-Parte*, no podemos soslayar la naturaleza de su petición. Molina Pérez, en su reconvención contra la recurrida, reclama una cuantía en daños sufridos producto de un arresto ilegal. Y es precisamente esta petición la que suscita la demanda de Acevedo Rosario contra Lorente Plaza. Por todo lo cual, justipreciamos que, a la luz del Artículo 6 de la Ley Núm. 104, supra, la demanda de la recurrida contra OAT no procede.

Acevedo Rosario plantea en su *"Demanda Contra Terceros"* que Lorente Plaza y OAT tienen que responder por los daños a los que ella pueda estar expuesta por el arresto ilegal de Molina Pérez. Razona, además, que la omisión de Lorente Plaza, que caracteriza como negligente e imprudente, ha provocado serios y prolongados daños emocionales y psicológicos, y ha expuesto continuamente a los recurridos "a situaciones de peligro y ansiedad causadas por los

actos de acecho, aumentando el riesgo de daño físico y emocional".[18] Por ello, aduce en la alternativa, que los peticionarios deben responderle por los daños causados, los cuales valoró en $25,000.00.

Esta Curia concluye que Lorente Plaza y OAT no responden por los daños a los que Acevedo Rosario pueda estar expuesta ante Molina Pérez, a la luz de la inmunidad condicionada y la inmunidad soberana. Rechazamos, también, la irrisoria contención que los peticionarios deben responder por daños psicológicos a los recurridos, por razón de la omisión de Lorente Plaza. Esto último, ya que la demanda de Acevedo Rosario contra los peticionarios es insuficiente en sus alegaciones.

Como vimos, para que las alegaciones de una parte puedan ser evaluadas y dadas por ciertas, es necesario que cuenten con suficiencia fáctica, y cumplan con el estándar de plausibilidad. Lo previo persigue que las mismas establezcan que la reclamación del remedio es plausible de su faz. Además, nuestro ordenamiento jurídico requiere que los tribunales distingamos entre las alegaciones bien hechas y aquellas de naturaleza concluyente que no puedan presumirse ciertas.

En el caso de autos, la recurrida no estableció, de manera directa o indirecta en sus alegaciones, qué posible conexión existe en la notificación incompleta de Lorente Plaza, a un patrón de peligro a la integridad física y sicológica de los recurridos. Es decir, no cumplió con el requisito de establecer en sus contenciones un nexo causal entre los alegados daños, y la omisión de Lorente Plaza. Es decir, no demostró plausibilidad fáctica en sus alegaciones. Así, colegimos que la *"Demanda Contra Terceros"*, en virtud de las Reglas

---

[18] SUMAC, Entrada Núm. 51, pág. 5.

de Procedimiento Civil, supra, no procede por no exponer una reclamación que justifique la concesión de un remedio.

**IV.**

Por los fundamentos antes esbozados, *expedimos* el recurso solicitado y disponemos lo siguiente: *revocamos* la *"Resolución"* recurrida, a los fines de desestimar la causa de acción contra Lorente Plaza, y *revocamos parcialmente* la *"Sentencia Parcial"* recurrida, a los fines de sostener la desestimación contra el Departamento de Justicia y dictaminar la desestimación de la causa de acción contra la OAT. De esta manera, *desestimamos la "Demanda Contra Terceros" de los recurridos en su totalidad.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Sánchez Ramos está conforme y añade, primero, que, de las alegaciones de los demandantes, no surge que exista un daño jurídicamente reconocible como consecuencia de la supuesta entrada ilegal del Sr. Molina a los predios del condominio. Segundo, tampoco hay alegaciones que permitan apartarnos de la regla general a los efectos de que ni el Estado Libre Asociado, ni sus funcionarios, responden por la conduta intencional delictiva de un tercero (en este caso, según se alega, el Sr. Molina), ni tampoco por el ejercicio discrecional del Ministerio Público de no presentar una denuncia penal en un caso determinado.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones